# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ISMAEL LOPEZ,

      Plaintiff,

vs.                                                                                     No. CIV 15-0193 JB/GBW

DELTA INTERNATIONAL MACHINERY
CORPORATION; DELTA MACHINE COMPANY,
INC.; ROCKWELL INTERNATIONAL CORPORATION;
ROCKWELL AUTOMATION, INC.; STANLEY BLACK
& DECKER, INC.; BLACK & DECKER (U.S.), INC.;
PENTAIR, INC.; KEARNEY & TRECKER
CORPORATION; GLH, LLC,

      Defendants.

## MEMORANDUM OPINION[1]

**THIS MATTER** comes before the Court on: (i) Defendant Delta International

Machinery Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed May 4, 2015 (Doc.

7)("Motion"); and (ii) Defendant Delta International Machinery Corp.'s Amended Motion to

Dismiss for Lack of Personal Jurisdiction, filed May 20, 2015 (Doc. 18)("Amended Motion").

The Court held a hearing on September 18, 2015.  The primary issue is whether the Court has

personal jurisdiction over Defendant Delta International Machinery Corporation ("Delta

Machinery").  The Court concludes that Plaintiff Ismael Lopez has not presented sufficient

evidence of the Court's personal jurisdiction over Delta Machinery.  The Court will grant both

---

[1]The Court issued an Order, filed March 11, 2016 (Doc. 70)("Order"), granting: (i)
Defendant Delta International Machinery Corp.'s Motion to Dismiss for Lack of Personal
Jurisdiction, filed May 4, 2015 (Doc. 7); and (ii) Defendant Delta International Machinery
Corp.'s Amended Motion to Dismiss for Lack of Personal Jurisdiction, filed May 20, 2015 (Doc.
18).  The Order stated that the Court "may at a later date issue a Memorandum Opinion more
fully detailing its rationale for this decision."  Order at 1 n.1.  This Memorandum Opinion is the
promised opinion.

motions without prejudice to Lopez moving to re-file his claims against Delta Machinery if he obtains additional evidence of personal jurisdiction by New Mexico over Delta Machinery.

## FACTUAL BACKGROUND

The Court takes its facts from: (i) the Plaintiffs Original Complaint, filed March 5, 2015 (Doc. 1-1); and (ii) the Affidavit of Theodore C. Morris, filed May 20, 2015 (Doc. 18-1)("Morris Decl."). On August 23, 2012, Lopez was sawing wood for 84 Lumber[2] in El Paso, Texas with a table power saw. See Complaint ¶ 13, at 12. The saw hit a knot[3] or bum,[4] and the blade "jump[ed] back," and severed Lopez' left middle and index fingers. Complaint ¶ 13, at 12. Lopez is a resident of El Paso, Texas. See Complaint ¶ 2, at 7.

Delta Machinery is a Minnesota corporation with its principal place of business in Maryland. See Morris Decl. ¶ 13, at 3. It does not have an office, employees, or registered agents in New Mexico. See Morris Decl. ¶¶ 14-16, at 3. It does not maintain bank accounts, own or lease property, or pay taxes in New Mexico. See Morris Decl. ¶¶ 18-20, at 3.

## PROCEDURAL BACKGROUND

Lopez brought suit in state court on January 13, 2015. See Complaint at 1. Lopez' Complaint names seven defendants, along with a variety of related entities, which he believes are

---

[2]84 Lumber is a "privately held building materials and services supplier to professional contractors and build-it-yourselfers," with over 250 stores in 30 states. 84 Lumber Company, About 84 Lumber Company (2014), available at http://www.84lumber.com/About/About.aspx. 84 Lumber is not named as a party in this case. See Complaint ¶¶ 3-9, at 7-10.

[3]Knots "are branches included in the wood of the stem or larger branch." Samuel J. Record, The Mechanical Properties of Wood (1st ed. 1914), available at http://www.gutenberg.org/files/12299/12299-h/12299-h.htm#II_06. Knots tend to weaken wood and make pieces of wood more difficult to cut. See id.

[4]The Court has conducted an extensive search for a definition of a "bum" in the woodworking context and has not located any reliable definitions. In any case, the precise nature of a bum is not significant to this matter's result.

- 2 -

responsible for his injury.  See Complaint ¶¶ 3-9, at 7-10.  The Complaint appears to allege two

counts: (i) strict products liability; and (ii) negligence, including one or more of sixteen

alternative theories.  See Complaint ¶¶ 13-17, ¶ 23, at 12-14.  Lopez seeks compensatory

damages for his medical care, lost wages, inability to perform household duties, and pain and

suffering.  See Complaint ¶¶ 24-25, at 15.  He also requests punitive damages based on the

Defendants' alleged "reckless, willful, fraudulent, wanton or in bad faith conduct."  Complaint ¶

27, at 15-16.  Defendants Stanley Black & Decker, Inc. and Black & Decker (U.S.) Inc. removed

the case to federal court on March 5, 2015.  See Notice of Removal, March 5, 2015 (Doc. 1).

    **1.**    **The Motion.**

Delta Machinery moved to dismiss the Complaint under rule 12(b)(2) for lack of personal

jurisdiction on May 4, 2015.  See Motion at 1.  Delta Machinery explains that that it "is a foreign

corporation, organized and existing under the laws of the State of Minnesota, has its principal

place of business outside of New Mexico, is not incorporated in the State of New Mexico, and

does not have a registered agent in New Mexico."  Motion at 1-2 (citing Daimler AG v. Bauman,

134 S. Ct. 746, 749 (2014)).  It notes that New Mexico's long-arm statute applies to non-

residents only when

> (1) the defendant has committed one of the enumerated acts or omissions set forth
> in NMSA 1978, § 38-1-16 within the State of New Mexico, (2) the plaintiff's
> cause of action arises from that alleged act or omission, and (3) the defendant has
> sufficient minimum contacts with New Mexico to satisfy due process
> requirements.

Motion at 4 (citing N.M. Stat. Ann. § 38-1-16, and Tercero v. Roman Catholic Diocese of

Norwich, Connecticut, 2002-NMSC-018, ¶ 8, 48 P.3d 50, 54).  As to the first prong, Delta

Machinery argues that: (i) Lopez' claims do not arise out of the transaction of business in New

Mexico, as the injury occurred in Texas; and (ii) Lopez did not allege that it transacted "***any***

business in New Mexico."  Motion at 5-6 (emphasis in original).  As to the second prong, Delta

Machinery contends that Lopez has failed to allege that its actions in New Mexico proximately

caused Lopez' injury.  See Motion at 6-7.  Delta Machinery concludes that "[w]ithout a claim

that Delta's actions in the State of New Mexico proximately caused Plaintiff's injury -- or that

Plaintiff's injury occurred in New Mexico -- there can be no negligence claim against Delta in

New Mexico."  Motion at 7.

       **2.**       **The Amended Motion.**

       Delta Machinery filed an Amended Motion on May 20, 2015.  See Amended Motion at 1.

The Amended Motion includes a new section arguing that Delta Machinery lacks minimum

contacts with New Mexico.  See Amended Motion at 7 (citing Int'l Shoe Co. v. Washington, 326

U.S. 310, 316 (1945)).  Delta Machinery explains that plaintiffs can meet the minimum-contacts

standard in two ways:

> Specific jurisdiction exists where the defendant "purposefully avails itself of the
> privilege of conducting activities within the forum State, thus invoking the
> benefits and protections of its laws."  Hanson v. Denckla, 357 U.S. 235, 253
> (1958). . .  General jurisdiction, on the other hand, exists when the defendant's
> contacts with the forum state are so "continuous and systematic" that the state
> may exercise personal jurisdiction over the defendant even if the suit is unrelated
> to the defendant's contacts with the state.  *Helicopteros Nacionales de
> Coloumbia, S.A. v. Hall*, 466 U.S. 408, 415-16 & n. 9 (1984).

Amended Motion at 8.  Delta Machinery argues that it has not purposefully availed itself of the

privilege of conducting business in New Mexico.  See Amended Motion at 9.  It notes that it has

not had a registered agent, offices, employees, property, or bank accounts in New Mexico for the

past ten years.  See Amended Motion at 9.  It thus concludes that "exercising personal

jurisdiction over Delta would offend traditional notions of fair play and substantial justice, and

should not be allowed."  Amended Motion at 9-10.

3.       **The Lack of a Response.**

Lopez did not file any response to the Motion or Amended Motion.  Under the Court's local rules, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion."  D.N.M. LR-Civ. 7.1(b).  This command does not apply to motions for summary judgment, see Gamez v. Country Cottage Care & Rehab., 377 F. Supp. 2d 1103, 1115 (D.N.M. 2005)(Browning, J.), or motions to dismiss under rule 12(b)(6), see Duncan v. Citibank (S. Dakota), N.A., No. CIV. 06-0246 JBKBM, 2006 WL 4063021, at *1 (D.N.M. June 30, 2006)(Browning, J.), because these types of motions require the moving party to meet an initial burden.  For motions for summary judgment, "[b]efore the burden shifts to the nonmoving party to demonstrate a genuine issue, the moving party must meet its 'initial responsibility' of demonstrating that no genuine issue of material fact exists and that it is entitled to summary judgment as a matter of law."  Murray v. City of Tahlequah, Okl., 312 F.3d 1196, 1200 (10th Cir. 2002).  Similarly, the Tenth Circuit has held that motions to dismiss under rule 12(b)(6) are meant to

> test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true.  Further, it is well established that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Consequently, even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted.

Issa v. Comp USA, 354 F.3d 1174, 1177-78 (10th Cir. 2003)(citations and quotations omitted). In contrast, motions to dismiss under rule 12(b)(2) place the initial burden on the plaintiff.  See Overton v. United States, 925 F.2d 1282, 1283 (10th Cir. 1991).  The Court concludes that it may treat motions to dismiss under rule 12(b)(2) as uncontested pursuant to D.N.M. LR-Civ. 7.1(b) if the plaintiff fails to respond.  See Ablulimir v. U-Haul Co. of Kansas, No. 11-4014-

EFM, 2011 WL 2746094, at *1 (D. Kan. July 13, 2011)(Melgren, J.)(applying a similar Local

Rule and reaching a similar conclusion).   The Court will nonetheless reach the Motion and

Amended Motions' merits because it heard Lopez' arguments at the September 18, 2015 hearing.

See QSG, Inc. v. Schlittler, No. 2:11-CV-871-TC, 2012 WL 1493944, at *3 (D. Utah Apr. 27,

2012)(Campbell, J.)("Despite the fact that QSG has the burden, QSG did not respond to the

12(b)(2) motion to dismiss.   Nevertheless, the court reviews the record as it stands . . . to

determine, on the merits, whether the court has personal jurisdiction over eClaimVision.").

     **4.**      **The Hearing.**

     The Court held a hearing on September 18, 2015.   See Transcript of Hearing at 1:1 (taken

September 18, 2015)("Tr.").[5]   The Court opened the hearing by questioning Lopez, who agreed

that, "if I don't have discovery, I have no response to their motion."   Tr. at 1:25-2:11 (Court,

Tawney).   Lopez explained that there are so many defendants, because "this saw was made many

years ago, at issue, and the name -- the brand has been sold multiple times to multiple different

parties, and so there's all sorts of issues with successor liability, whether the liabilities were

purchased or not."   Tr. at 3:19-23 (Tawney).   The Court then gave its inclination.   It noted:

> It seems to me that before I allow discovery, jurisdictional discovery, there should
> be a greater showing than the plaintiff is able to make or is making in this case.
> Otherwise, I get in the position of somebody just filing a complaint and I really
> don't have any jurisdictional basis and they say let me have jurisdictional
> discovery, to try to keep my case here in New Mexico, and it seems to me that's
> backwards.

Tr. at 4:20-5:4 (Court).   Lopez responded by noting that he would re-file in other states if the

Court granted the Motion.   See Tr. at 6:20-25 (Tawney).   He explained that denying the motion

---

     [5]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions.   Any final versions may contain slightly different page and/or line numbers.

would eliminate the need to involve "three different courts in three different states, three different sets of discovery going on, three different sets of lawyers."  Tr. at 11:4-10 (Tawney).

Lopez agreed with the Court that his strongest argument for personal jurisdiction would probably be general jurisdiction.  See Tr. at 11:11-22 (Court, Tawney).  Lopez stated that he needed discovery on jurisdiction primarily to make general jurisdiction arguments, but raised the possibility that a business in New Mexico could have serviced the saw that caused his injuries. See Tr. at 12:10-20 (Court, Tawney).

The Court then focused on Lopez' general jurisdiction arguments.  See 13:21-24 (Court). The Court asserted that the "stream of commerce" requires more than simply placing a product in the stream -- that "[y]ou got to be Chevrolet selling Chevrolets in Alaska to really get that stream of commerce."  Tr. at 12:24-13:6 (Court).  The Court asked Lopez whether he had done any research to show general jurisdiction, such as photographs of stores and internet searches. See Tr. at 13:17-24 (Court).  Lopez replied:

> I'm not here to say I haven't done anything, Your Honor.  This saw was bought ten years ago.  I have sued multiple parties. . . .  I have taken a deposition in Texas litigation.  I have tried to establish where this saw has come from. . . .  As far as who we can ask and who I have been allowed to ask, I have done that. And I have gone on the Internet . . . .  I have done the research to try to make sure I have got the right people.

Tr. at 13:25-14:18 (Tawney).  The Court referred the parties to its opinion in Fabara v. GoFit, LLC, 308 F.R.D. 380, 408 (D.N.M. 2015)(Browning, J.).

Delta Machinery clarified that the stream-of-commerce argument applies to specific jurisdiction rather than to general jurisdiction.  See Tr. at 15:21-16:2 (Court, DeCandia).  As to general jurisdiction, Delta Machinery argued that, "if there were continuous and systematic contacts with New Mexico, there would be something out there that plaintiff could have found," like a store or website.  Tr. at 16:24-17:2 (DeCandia).  Delta Machinery also directed the Court

to <u>Daimler AG v. Bauman</u>, which it said held that "[t]he company essentially has to be at home here."  Tr. at 18:4-8 (DeCandia).  Delta Machinery asserted that the actions at issue here occurred elsewhere and that it is a separate entity from Black & Decker.  <u>See</u> Tr. at 18:8-22 (DeCandia).

The Court then summed up its likely ruling:

> I think I have to grant these motions to dismiss.  I will do them without prejudice. This is a jurisdictional issue, so I don't have any real choice.  I think these have to be dismissed without prejudice. . . .  I don't think I can start allowing plaintiffs to file on such a thin allegation and then come in and start doing discovery in this court.  I think that would put the cart before the horse, and so I think I have to observe rules of jurisdiction.

Tr. at 21:13-25 (Court).

## STANDARD FOR DETERMINING RULE 12(b)(2) MOTIONS

Motions to dismiss under rule 12(b)(2) test the plaintiff's theory of personal jurisdiction as well as the facts supporting personal jurisdiction.  <u>See</u> <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d 151, 153-54 (2d Cir. 1999).  Rule 12(b)(2) concerns lack of personal jurisdiction.  <u>See</u> Fed. R. Civ. P. 12(b)(2).  In determining personal jurisdiction, a court must test not only the complaint's jurisdictional theory, but also the facts on which jurisdiction is predicated.  <u>See</u> <u>Credit Lyonnais Sec. (USA), Inc. v. Alcantara</u>, 183 F.3d at 154 (holding that the court "must determine whether the defendant in fact subjected itself to the court's jurisdiction"). Where a defendant raises a timely challenge contesting personal jurisdiction, the plaintiff bears the burden of establishing that there is personal jurisdiction over the defendant and that the exercise of personal jurisdiction would not violate due-process requirements.  <u>See</u> <u>Overton v. United States</u>, 925 F.2d at 1283; <u>Rambo v. Am. S. Ins. Co.</u>, 839 F.2d 1415, 1417 (10th Cir. 1988); <u>Jemez Agency, Inc. v. CIGNA Corp.</u>, 866 F. Supp. 1340, 1342 (D.N.M. 1994)(Burciaga, J).  At this stage of the proceedings, it is not for the court to resolve disputed facts.  <u>See</u> <u>Daynard</u>

v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 45 (1st Cir. 2002).  Rather, the court "'must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing.'"  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d at 45 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir. 1995)).

## LAW REGARDING PERSONAL JURISDICTION

The plaintiff has the burden of proving personal jurisdiction.  The court's jurisdiction may rest on general or specific personal jurisdiction.  Due process, however, limits any state statutory basis for personal jurisdiction.

### 1.    Burden of Proof.

"[W]hen the court's jurisdiction is contested, the plaintiff has the burden of proving jurisdiction exists."  Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995).

> When jurisdiction is "decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing" of facts that would support the assertion of jurisdiction.  [Wenz v. Memery Crystal, 55 F.3d at 1505].  "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavit."  Behagen v. Amateur Basketball Ass'n, 744 F.2d at 733.  When, however, a defendant presents credible evidence through affidavits or other materials suggesting the lack of personal jurisdiction, the plaintiff must come forward with sufficient evidence to create a genuine dispute of material fact on the issue.  See Doe v. Nat'l Med. Servs., 974 F.2d 143, 145 (10th Cir. 1992).  Only if the plaintiff meets the obligation of contesting the credible evidence that the defendant presents does the court resolve the factual disputes in favor of the plaintiff.  See Wenz v. Memery Crystal, 55 F.3d at 1505; Behagen v. Amateur Basketball Ass'n, 744 F.2d at 733.

Clark v. Meijer, Inc., 376 F. Supp. 2d 1077, 1082 (D.N.M. 2004)(Browning, J.).  When, however, "personal jurisdiction is assessed in an evidentiary hearing . . . , the plaintiff generally must establish, by a preponderance of the evidence, that personal jurisdiction exists."  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1070 n.4 (10th Cir. 2008).

"Where a federal lawsuit is based on diversity of citizenship, the court's jurisdiction over a nonresident defendant is determined by the law of the forum state." Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1166 (10th Cir. 2011). "The party seeking to establish personal jurisdiction over a foreign litigant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment" to the Constitution of the United States of America. Marcus Food Co. v. DiPanfilo, No. CIV 10-3285, 2011 WL 5084997, at *3 (10th Cir. Oct. 27, 2011). New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 6, 48 P.3d 50, 54 (2002). Consequently, the Court "need not conduct a statutory analysis apart from the due process analysis." Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *3 (internal quotation marks omitted).

**2.      General and Specific Jurisdiction.**

Depending on the character and extent of a defendant's contacts, a court may exercise general or specific personal jurisdiction. See Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and systematic" contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for "benefitting" from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078 (emphasis in original). Thus, "[s]uch contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

A court may assert specific jurisdiction "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)(citations omitted)(internal quotation marks omitted).  In the tort context, a defendant has "purposefully directed" his activities at New Mexico or its residents when he or she has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New Mexico. Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. 783, 789-90 (1984)).

Cases involving the internet modify these general personal jurisdiction principles.  In these cases, the United States Court of Appeals for the Tenth Circuit focuses on whether the website or internet user "intentionally direct[ed] his/her/its activity or operation at the forum state rather than just having the activity or operation accessible there." Shrader v. Biddinger, 633 F.3d 1235, 1240 (10th Cir. 2011)(emphasis in original).  Simply posting defamatory statements on a website will not, standing alone, establish personal jurisdiction over the poster in any state where the post may be read.  See Shrader v. Biddinger, 633 F.3d at 1241.  Instead, courts consider whether the "defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state." Shrader v. Biddinger, 633 F.3d at 1241.  In short, "the forum state itself must be the focal point of the tort." Shrader v. Biddinger, 633 F.3d at 1244 (emphasis in original)(quoting Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1074 n.9)(internal quotation marks omitted).

3.   **Due Process and Personal Jurisdiction.**

The due process analysis is also two-fold:  First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he "purposefully

availed" himself of the protections or benefits of the state's laws and "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-76 . . . (1985); see also Emp'rs Mut. Cas. Co., 618 F.3d at 1159-60 (reiterating the Burger King standard). Although agreements alone are likely to be insufficient to establish minimum contacts, "'parties who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.'" TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d 1282, 1287-88 (10th Cir. 2007)(quoting Burger King, 471 U.S. at 473, 478 . . . .

Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4.

A defendant may reasonably anticipate being subject to suit in the forum state "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 . . . (1985)(internal citation omitted); see also Hanson v. Denckla, 357 U.S. 235, 253 . . . (1958)("[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State.").

TH Agric. & Nutrition, LLC v. Ace Eur. Grp. Ltd., 488 F.3d at 1287-88. The Supreme Court of the United States has held that the mere foreseeability of harm occurring in a particular forum will not support a finding of minimum contacts. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295 (1980)(holding that, although "an automobile is mobile by its very design and purpose," thus indicating that it is foreseeable that a particular automobile may cause injury in a forum state, "'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause"). In Roberts v. Piper Aircraft Corp., 1983-NMCA-110, 670 P.2d 974, the Court of Appeals of New Mexico similarly rejected the argument that foreseeability could establish minimum contacts, and found no personal jurisdiction or minimum contacts in the following circumstances:

[T]he record is devoid of any contact between Scenic Aviation and New Mexico. Scenic Aviation is a fixed-base operator selling aviation fuel in Las Vegas, Nevada. There is no evidence that Scenic Aviation advertises in New Mexico, or sells fuel to New Mexico residents. Without "contacts, ties, or relations" with

New Mexico the fact that fuel sold by Scenic Aviation found its way into our state
does not support a valid exercise of personal jurisdiction.

1983-NMCA-110, ¶ 19, 670 P. 2d at 978.   "[T]he foreseeability that is critical to due process

analysis is not the mere likelihood that a product will find its way into the forum State.  Rather, it

is that the defendant's conduct and connection with the forum State are such that he should

reasonably anticipate being haled into court there."   World-Wide Volkswagen Corp. v.

Woodson, 444 U.S. at 297.   As the Tenth Circuit has further explained, because "mere

foreseeability" is not sufficient to establish minimum contacts, a plaintiff "must establish . . .  not

only that defendants foresaw (or knew) that the effects of their conduct would be felt in the

forum state, but also that defendants undertook intentional actions that were expressly aimed at

that forum state."   Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1077.

Similarly, to find general jurisdiction over a defendant, contacts must be "continuous and

systematic"; therefore, "[s]imply because a defendant has a contractual relationship and business

dealings with a person or entity in the forum state does not subject him to general jurisdiction

there"; "correspondence with a forum resident does not support general jurisdiction;" and

"sporadic or isolated visits to the forum state will not subject the defendant to general

jurisdiction," because a "[defendant's] lack of a regular place of business in [the forum state] is

significant, and is not overcome by a few visits."   Shrader v. Biddinger, 633 F.3d at 1247.

"[G]eneral jurisdiction over a web site that has no intrinsic connection with a forum state

requires commercial activity carried on with forum residents in such a sustained manner that it is

tantamount to actual physical presence within the state."   Shrader v. Biddinger, 633 F.3d at 1246.

When analyzing minimum contacts sufficient for general jurisdiction in regard to the operation

of a web site, the Tenth Circuit has referred to, without adopting, a "sliding scale" framework.

Shrader v. Biddinger, 633 F.3d at 1242 n.5.

At one end of the spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper.   At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions.  A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction.  The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer.   In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

633 F.3d 1242 n.5 (internal quotation marks omitted).

If [the defendant] is found to have the requisite minimum contacts with [the forum state], then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him "does not offend 'traditional notions of fair play and substantial justice.'"  See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 . . . (1980)(quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 . . . (1945)).  [The defendant] bears the burden at this stage to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  See Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d 1063, 1080 (10th Cir. 2008).  We consider the following five factors, . . . in deciding whether the exercise of jurisdiction would be fair:

(1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

Id. (brackets omitted); see also OMI Holdings, Inc., 149 F.3d at 1095 (applying these factors in a case involving a Canadian corporation).   "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction."  TH Agric. & Nutrition, LLC, 488 F.3d at 1292 (internal quotation marks and brackets omitted).

Marcus Food Co. v. DiPanfilo, 2011 WL 5084997, at *4-5.

In Silver v. Brown, 678 F. Supp. 2d 1187 (D.N.M. 2009)(Browning, J.), the Court

considered whether it had personal jurisdiction over defendants who allegedly slandered,

defamed, and caused the plaintiff -- Michael Silver -- duress, by posting a blog on the internet that portrayed him in a negative light.  See 678 F. Supp. 2d at 1204.  The Court determined that it did not have personal jurisdiction over defendant Jack McMullen, because Silver failed to demonstrate that McMullen "was significantly associated with the blog or controlled it in any way."  678 F. Supp. 2d at 727.  The Court also concluded that it did not have personal jurisdiction over the blog post's author -- Matthew Brown -- because he was not domiciled in New Mexico, had not traveled to New Mexico, and did not transact business there.  See 678 F. Supp. 2d at 1211.  The Court said that Brown's blog posts similarly did not establish personal jurisdiction, because

> the blog is closer to an informative website than a commercial website.  No services are offered, and Brown is not collecting revenue from the website. Brown does not interact with the people who post information on the blog. Brown, to the Court's knowledge, did not solicit negative postings on the website. Further, even though people in New Mexico can view the website, the blog is not a website that is directed solely at the people of New Mexico.  The number of people who can access the website in New Mexico in comparison to those who are able to access the website throughout the world, or even in the United States, according to the statistics that Silver provided at the hearing, is nominal.

678 F. Supp. 2d at 1211-12.

On appeal, the Tenth Circuit affirmed the Court's holding as to McMullen, but reversed its decision as to Brown.  See Silver v. Brown, 382 F. App'x at 727-32.  In an opinion that the Honorable Monrow G. McKay, United States Circuit Judge for the Tenth Circuit, authored, and Judges Broby and Ebel joined, the Tenth Circuit applied the three-part test from Calder v. Jones to conclude that the Court had personal jurisdiction over Brown.  See Silver v. Brown, 382 F. App'x at 727-32.

Judge McKay first explained that the posting of the blog was "clearly an intentional act" designed to damage the plaintiff's reputation.  382 F. App'x at 729.  Second, Judge McKay said

that Brown had "expressly aimed his blog at New Mexico[,]" where Silver, his business, and the majority of his customers were located.  382 F. App'x at 729.  Judge McKay said: "It was about a New Mexico resident and a New Mexico company.  The blog complained of Mr. Silver's and [his business'] actions in the failed business deal.  Those actions occurred mainly in New Mexico."  382 F. App'x at 729-30.  Third, Judge McKay explained that Brown knew Silver would suffer the brunt of his injury in New Mexico, as the state was "unquestionably the center of his business activities."  382 F. App'x at 730.

4.      **New Mexico's Long-Arm Statute.**

New Mexico's long-arm statute provides, in relevant part, that its courts may exercise personal jurisdiction over a party "whether or not a citizen or resident of this state . . . as to any cause of action arising from: (1) the transaction of business within this state . . . [or] (3) the commission of a tortious act within this state . . . ."  N.M. Stat. Ann. § 38-1-16.  For New Mexico courts

> to exercise personal jurisdiction over nonresident, out-of-state defendants, the following three-part test must be satisfied:
>
> > (1) the defendant's act must be one of the five enumerated in the long-arm statute; (2) the plaintiff's cause of action must arise from the act; and (3) minimum contacts sufficient to satisfy due process must be established by the defendant's act.
>
> State Farm Mut. Ins. Co. v. Conyers, 109 N.M. 243, 244, 784 P.2d 986, 987 (1989)(citing Salas v. Homestake Enterprises, Inc., 106 N.M. 344, 345, 742 P.2d 1049, 1050 (1987)).  The first and third step of this test have been "repeatedly equated" with the due process standard of "minimum contacts."

F.D.K. v. Hiatt, 1994-NMSC-044, ¶ 7, 872 P.2d 879, 881.  "When negligent acts occur outside New Mexico which cause injury within the state, a 'tortious act' has been committed for purposes of the long-arm statute."  Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 20, 48 P.3d at 57.  "As with the transaction of business analysis, rather than

engage in a technical analysis of whether the defendant committed a tortious act, we must equate the 'tortious act' which the defendant is alleged to have committed with minimum contacts to determine if due process has been satisfied." Tercero v. Roman Catholic Diocese of Norwich, Conn., 2002-NMSC-018, ¶ 20, 48 P.3d at 57 (alteration omitted)(internal quotation marks omitted).

### 5.     The Court's Recent Cases.

The Court recently decided cases dealing with general and specific jurisdiction.   In Fabara v. GoFit, LLC, a plaintiff injured by an allegedly defective exercise ball in New Mexico brought suit against the manufacturer, which was incorporated and headquartered in Oklahoma. See 308 F.R.D. at 408.  The manufacturer moved to dismiss the complaint under rule 12(b)(2), arguing that the plaintiff lacked general jurisdiction because its contacts with New Mexico were neither continuous nor systematic.   See 308 F.R.D. at 384.   The plaintiff responded with photographs of the manufacturers' products in several stores, arguing that the manufacturer delivered the exercise balls into the stream of commerce with the expectation that New Mexico customers would purchase and use them.  See 308 F.R.D. at 389.  The Court rejected this theory, explaining that the manufacturer's contacts with New Mexico were not "so systematic and continuous as to make it essentially at home here."  308 F.R.D. at 397.  The Court noted that the manufacturer had almost no physical connections with New Mexico, and that its internet sales of roughly $20,000.00 over nine years were insufficiently "substantial" to support general jurisdiction. 308 F.R.D. at 402.

In Diener v. Trapeze Asset Management, Inc., No. CV 15-0566 JB/LAM, 2015 WL 8332933 (D.N.M. Nov. 30, 2015)(Browning, J.), the Court considered whether it had specific jurisdiction over a Canadian asset management firm that maintained a passive website, placed its

name in a third party's money-manager listing, mailed marketing materials to New Mexico, had telephone conversations with plaintiffs located in New Mexico, and ultimately entered into a contract with plaintiffs located in New Mexico.  <u>See</u> 2015 WL 8332933, at *1.  The Court concluded that it did not have specific jurisdiction for four primary reasons.  <u>See</u> 2015 WL 8332933, at *13.  First, the website was wholly passive and did not allow visitors "the opportunity to invest or interact with the site."  2015 WL 8332933, at *15.  Second, the third-party listing was similarly passive.  <u>See</u> 2015 WL 8332933, at *15.  Third, the Court noted that "phone calls and letters are not necessarily sufficient in themselves to establish minimum contacts," noting that the alleged torts occurred in Canada.  2015 WL 8332933, at *17 (quoting <u>Benton v. Cameco Corp.</u>, 375 F.3d 1070, 1077 (10th Cir. 2004)).  Fourth, the plaintiffs reached out to the defendants to create the contractual relationship, distinguishing the case from cases finding purposeful availment.  <u>See</u> 2015 WL 8332933, at *17 (citing <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. at 473).

## <u>ANALYSIS</u>

"The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in the litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a prima facie showing."  <u>Shrader v. Biddinger</u>, 633 F.3d at 1239.  To satisfy the requirements of the New Mexico long-arm statute, the Court must apply a three-prong test: (i) did the defendant commit an act or omission set forth in N.M. Stat. Ann. § 38-1-16; (ii) does the plaintiff's cause of action arise out of the alleged acts or omissions; and (iii) does the defendant have sufficient minimum contacts with New Mexico to satisfy due process concerns.  <u>See</u> <u>Walker v. THI of New Mexico at Hobbs Center</u>, 801 F. Supp. 2d 1128, 1143 (D.N.M. 2011)(Browning, J.)(citing <u>Tercero v. Roman Catholic Diocese</u>, 2002-NMSC-018, ¶ 8, 48 P.3d

at 54).   Because New Mexico has extended the reach of its long-arm statute as far as is

constitutionally permissible, federal due process principles govern the inquiry.   See Walker v.

THI of New Mexico at Hobbs Center, 801 F. Supp. 2d at 1143.   As the Supreme Court of New

Mexico has explained:

> Because we have interpreted the long-arm statute as extending our personal
> jurisdiction as far as constitutionally permissible, it is not necessary to determine
> whether the [defendant] transacted business within New Mexico in any technical
> sense.   When the state courts have construed the state long-arm statute as being
> coextensive with the requirements of due process, "the usual two-step analysis
> collapses into a single search for the outer limits of what due process permits."

Fed. Deposit Ins. Corp. v. Hiatt, 1994-NMSC-044, ¶ 7, 872 P.2d 879, 881.   See Shrader v.

Biddinger, 633 F.3d at 1239 ("Where . . . the state long arm statute supports personal jurisdiction

to the full extent constitutionally permitted, due process principles govern the inquiry.").   The

Court will therefore address only whether Delta Machinery has minimum contacts with New

Mexico such that maintenance of Lopez' suit against it does not "offend traditional notions of

fair play and substantial justice."   Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at

1070 (quoting Int'l Shoe Co. v. Washington, 326 U.S. at 316).

A defendant may have "minimum contacts" with the forum state in one of two ways,

providing a court with either general or specific personal jurisdiction.   Trierweiler v. Croxton &

Trench Holding Corp., 90 F.3d 1523, 1532-33 (10th Cir. 1996).   See Helicopteros Nacionales de

Columbia, S.A. v. Hall, 466 U.S. at 414 (1984).

> General jurisdiction is based on an out-of-state defendant's "continuous and
> systematic" contacts with the forum state, and does not require that the claim be
> related to those contacts.   Specific jurisdiction, on the other hand, is premised on
> something of a quid pro quo: in exchange for "benefitting" from some purposive
> conduct directed at the forum state, a party is deemed to consent to the exercise of
> jurisdiction for claims related to those contacts.

Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078.   Thus, "[s]uch contacts may

give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities." Shrader v. Biddinger, 633 F.3d 1235, 1239 (10th Cir. 2011).

The Court will grant the Motion. Lopez has not presented sufficient evidence that the Court has general or specific jurisdiction over Delta Machinery. The Court will, however, allow Lopez to seek leave to join Delta Machinery if he obtains additional evidence of personal jurisdiction.

## I.    THE COURT DOES NOT HAVE GENERAL JURISDICTION OVER DELTA MACHINERY.

The Court interprets the Complaint as arguing that the Court has general jurisdiction over Delta Machinery because Delta Machinery had "continuous and systematic" contacts with New Mexico. Complaint ¶ 12, at 12. The Supreme Court rejected this theory of general jurisdiction in Goodyear Dunlop Tires Operations, S.A. v. Brown, 131 S. Ct. 2846 (2011)("Goodyear"). That case involved two boys from North Carolina who were killed in a bus accident outside Paris, France. See 131 S. Ct. at 2850. The boys' parents brought a wrongful-death suit in North Carolina state court against Goodyear Tire and Rubber Company, an Ohio Corporation, and Goodyear Tire's Turkish, French, and Luxembourgian subsidiaries. See 131 S. Ct. at 2850. The boys' parents alleged, among other things, that the defendants defectively manufactured the bus' tires. See 131 S. Ct. at 2850. The North Carolina courts concluded, as Lopez urges the Court to conclude here, that they could exercise general personal jurisdiction over Goodyear Tire's foreign subsidiaries, because they placed their tires "in the stream of interstate commerce without any limitation on the extent to which those tires could be sold in North Carolina." 131 S. Ct. at 2852 (citation omitted). The Supreme Court reversed. See 131 S. Ct. at 2854-57. In an opinion that the Honorable Ruth Bader Ginsburg, Associate Justice of the Supreme Court, authored, the

Supreme Court criticized the North Carolina courts' stream-of-commerce analysis as "elid[ing] the essential difference between case-specific and all-purpose (general) jurisdiction."  131 S. Ct. at 2855.  She explained that, while placing a product into the stream of commerce "may bolster an affiliation germane to specific jurisdiction," such contacts "do not warrant a determination that, based on those ties, the forum has general jurisdiction over the defendant."  131 S. Ct. at 2855 (citation omitted).  Justice Ginsburg clarified that general personal jurisdiction does not turn on whether the nonresident defendant's contacts with the forum state are in some sense "continuous and systematic," but rather on whether the defendant's contacts "are so continuous and systematic as to render it essentially at home in the forum state."  131 S. Ct. at 2851 (brackets omitted)(citation omitted)(internal quotation marks omitted).  Justice Ginsburg concluded that, because Goodyear Tire's subsidiaries "are in no sense at home in North Carolina," they are not subject to general personal jurisdiction there.  131 S. Ct. at 2857.

In case there was any doubt as to Goodyear's meaning, the Supreme Court revisited the issue of general personal jurisdiction in Daimler AG v. Bauman.  That case involved claims against Daimler AG, a German manufacturer of Mercedes-Benz vehicles, for the company's collaboration with Argentine state-security forces in alleged human-rights violations.  See 134 S. Ct. at 750-752.  The plaintiffs argued that Daimler AG's ties to California -- particularly through one of its subsidiaries, which is the largest supplier of luxury vehicles to the California market -- gave rise to general personal jurisdiction.  See 134 S. Ct. at 750-753.  The plaintiffs posited that general personal jurisdiction lies wherever a corporation "engages in a substantial, continuous, and systematic course of business."  134 S. Ct. at 760-61.

In another opinion that Justice Ginsburg penned, the Supreme Court rejected the plaintiffs' general personal jurisdiction argument as "unacceptably grasping."  134 S. Ct. at 761

(citation omitted)(internal quotation marks omitted).  She explained that the paradigmatic bases for general personal jurisdiction over a corporate defendant are the corporation's "place of incorporation and principal place of business."  134 S. Ct. at 760.  She noted that the words "continuous and systematic were used in International Shoe to describe instances in which the exercise of specific jurisdiction would be appropriate," and reinforced that the relevant inquiry for general personal jurisdiction purposes "is whether that corporation's affiliations with the State are so continuous and systematic as to render it essentially at home in the forum State." 134 S. Ct. at 762 (emphasis in original)(citation omitted)(internal quotation marks omitted).  The Tenth Circuit has since repeated this standard.  See Monge v. RG Petro-Machinery (Grp.) Co., 701 F.3d 598, 614 (2012)("General jurisdiction requires that a defendant have contacts with the forum 'so continuous and systematic as to render it essentially at home in the forum State.'" (quoting Goodyear, 131 S. Ct. at 2846, 2851)(brackets omitted)); Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Can., Ltd., 703 F.3d 488, 493 (10th Cir. 2012)("General jurisdiction requires that a defendant have contacts with the forum 'so continuous and systematic as to render it essentially at home in the forum State.'"  (quoting Goodyear, 131 S. Ct. at 2846, 2851)(brackets omitted)).

That Delta Machinery may have injected a saw into the stream of commerce, knowing that the saw could be sold in New Mexico, is insufficient to establish the Court's personal jurisdiction.  Delta Machinery is headquartered in Maryland and organized under the laws of the State of Minnesota.  See Morris Decl. ¶ 13, at 3.  Given that it is not even registered to do business in New Mexico, it does not have its principal place of business here.  See Morris Decl. ¶ 17, at 3.  For the Court to exercise general personal jurisdiction over Delta Machinery, its contacts with New Mexico must be "so continuous and systematic as to render it essentially at

home in the forum state." Daimler AG v. Bauman, 134 S. Ct. at 761 (alteration omitted)(citation omitted)(internal quotation marks omitted). This inquiry does not focus "solely on the magnitude of the defendant's in-state contacts," but instead "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." Daimler AG v. Bauman, 134 S. Ct. at 762 n.20 (citation omitted)(internal quotation marks omitted). Lopez' allegations fall short of this demanding standard.

Lopez' allegations also fail to meet the Tenth Circuit's test[6] for general jurisdiction. The Tenth Circuit uses the following factors to determine whether a defendant's contacts with the forum state trigger general personal jurisdiction:

> (1) whether the corporation solicits business in the state through a local office or agents; (2) whether the corporation sends agents into the state on a regular basis to solicit business; (3) the extent to which the corporation holds itself out as doing business in the forum state, through advertisements, listings or bank accounts; and (4) the volume of business conducted in the state by the corporation.

Trierweiler v. Croxton, 90 F.3d at 1533. All of these factors weigh against exercising general personal jurisdiction over Delta Machinery.

Delta Machinery is a corporation organized under Minnesota law and has its principal place of business in Maryland. See Morris Decl. ¶ 13, at 3. It has no local office, employees, or registered agents in New Mexico. See Morris Decl. ¶¶ 14-16, at 3. It does not maintain bank accounts, own or lease property, or pay taxes within New Mexico. See Morris Decl. ¶¶ 18-20, at 3. Lopez has not submitted any evidence of the volume of Delta Machinery's sales into New Mexico.

---

[6]The Tenth Circuit has repeated the Goodyear standard without overruling its prior general personal jurisdiction cases. See Fabara v. GoFit, LLC, 308 F.R.D. at 404.

Moreover, the Court notes that Lopez has not supplied it with even basic information on Delta Machinery's connection to New Mexico.  In Fabara v. GoFit, LLC, the plaintiff submitted a "collection of photographs of GoFit, LLC products that [he] took at local retail stores."  308 F.R.D. at 403.   In Diener v. Trapeze Asset Management, Inc., the plaintiff argued that the defendant's website was a basis for personal jurisdiction.  See 2015 WL 8332933, at *15.  Given that the Court rejected the plaintiffs' arguments in both of these cases, Lopez cannot reasonably expect to succeed by presenting even less evidence.  See Diener v. Trapeze Asset Mgmt., Inc., 2015 WL 8332933, at *15; Fabara v. GoFit, LLC, 308 F.R.D. at 403.

## II.   THE COURT DOES NOT HAVE SPECIFIC JURISDICTION OVER DELTA MACHINERY.

Lopez fails to make even a prima facie showing that the Court has specific jurisdiction over Delta Machinery.  Lopez must show that Delta Machinery "has purposefully directed' [its] activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities."   Burger King Corp. v. Rudzewicz, 471 U.S. at 472 (1985)(citations omitted)(internal quotation marks omitted).   "Specific jurisdiction . . . is premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1078.

First, Lopez has not made any showing that Delta Machinery "purposefully directed" its activities at New Mexico residents.  Burger King Corp. v. Rudzewicz, 471 U.S. at 472.  Delta Machinery has "purposefully directed" its activities at New Mexico or its residents if it has: (i) taken intentional action; (ii) the action was "expressly aimed" at New Mexico; and (iii) the action was taken with the knowledge that "the brunt of th[e] injury" would be felt in New

Mexico.  Dudnikov v. Chalk & Vermilion Fine Arts, Inc., 514 F.3d at 1072 (quoting Calder v. Jones, 465 U.S. at 789-90).  Lopez' skeletal Complaint alleges only that Delta Machinery is "authorized to do business in New Mexico," Complaint ¶ 3, at 7.  It admits that Delta Machinery "does not have a registered agent in the State of New Mexico."  Complaint ¶ 3, at 8.  Lopez did not respond in writing to the Motion and conceded at the hearing that, "if I don't have discovery, I have no response to their motion."  Tr. at 1:25-2:11 (Court, Tawney).  His only argument on personal jurisdiction is conclusory:

> Plaintiff would show that Defendants DELTA INTERNATIONAL MACHINERY CORP., ROCKWELL MANUFACTURING COMPANY, PENTAIR INC., DELTA MACHINE COMPANY INC., and KEARNEY & TRECKER CORPORATION [through] their entities, employees, agents and representative satisfy the minimum contacts requirement with the state of New Mexico.  It was foreseeable that Defendants [sic] products would be used in the streets of New Mexico and in the street [sic] of commerce, Defendant shave [sic] also engaged in continuous and systematic [contacts] with the State of New Mexico, Such [sic] that Defendants could reasonably anticipate [that] claims from their business operations [would] arise in New Mexico. Defendants had continuous and systematic contact with the State of New Mexico and the assertion of personal jurisdiction is proper in this case; and the assertion of personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

Complaint ¶ 12, at 12.  The Amended Motion, on the other hand, explains:

> In reality, Delta is not registered to do business in New Mexico.  Delta does not have any offices, employees, or registered agents in New Mexico, and it does not own or lease any property in New Mexico.  Delta does not pay taxes in New Mexico and does not have any bank accounts in New Mexico.  All of these facts have been true for at least ten years.

Amended Motion ¶ 8, at 3.  Delta Machinery supports its Amended Motion with a sworn affidavit.  See Morris Affidavit at 1.  The Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole,

P.A., 290 F.3d at 45.   Lopez, however, provides no documents regarding Delta Machinery's activities in New Mexico.

Second, Lopez has not shown that this litigation results from alleged injuries that arose out of or relate to Delta Machinery's activities in New Mexico.   See Burger King Corp. v. Rudzewicz, 471 U.S. at 472.   Lopez' Complaint admits that "[t]he injuries and damages suffered by Plaintiff and made the basis of this action arose out of an occurrence on or about August 23, 2012 in El Paso, Texas."   Complaint ¶ 13, at 12.   Lopez does not connect this accident in Texas to any of Delta Machinery's alleged activities in New Mexico.   Lopez' suggestion that Delta Machinery could have had some "type of service place down in this area where they possibly could have serviced this saw," in the absence of any supporting evidence, is too speculative for the Court to allow discovery to continue.   Tr. at 12:10-20 (Court, Tawney).   Lopez does not even reside in New Mexico.   See Complaint ¶ 2, at 7.

The Court concludes that Lopez has not made a prima facie showing that Delta Machinery has sufficient "minimum contacts" with New Mexico under a general jurisdictional theory.   Lopez also does not have specific jurisdiction.   Accordingly, the Court does not have personal jurisdiction over Delta Machinery.

**IT IS ORDERED** that: (i) Defendant Delta International Machinery Corp.'s Motion to Dismiss for Lack of Personal Jurisdiction, filed May 4, 2015 (Doc. 7); and (ii) Defendant Delta International Machinery Corp.'s Amended Motion to Dismiss for Lack of Personal Jurisdiction, filed May 20, 2015 (Doc. 18), are granted without prejudice to Plaintiff Ismael Lopez seeking to join Defendant Delta International Machinery Corporation again if he obtains additional evidence of personal jurisdiction.

UNITED STATES DISTRICT JUDGE

*Counsel:*

James Daniel Tawney
Joseph G. Isaac
Scherr & Legatae, P.L.L.C.
El Paso, Texas

     *Attorneys for the Plaintiff*

Donald A. DeCandia
Thomas J. Garcia
Modrall Sperling Roehl Harris & Sisk, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendants Delta International Machinery Corporation, Stanley Black &
       Decker, Inc., Black & Decker (U.S.) Inc., Rockwell Automation, Inc., and Pentair, Inc.*

Stephen Simone
Simone, Roberts & Weiss, P.A.
Albuquerque, New Mexico

     *Attorneys for Defendant GLH, L.L.C.*